IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM SULLIVAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: |
| | § | 3-08-CV-1089-M |
| AT&T, Inc., As Plan Administrator for the | § | |
| AT&T Pension Benefit Plan-Southwest Program | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant AT&T Inc.'s Motion for Summary Judgment [Docket

Entry #16] and Plaintiff William Sullivan's Motion for Partial Summary Judgment [Docket

Entry #19].  For the reasons stated below, AT&T Inc.'s Motion for Summary Judgment is

**GRANTED**, and William Sullivan's Motion for Partial Summary Judgment is **DENIED**.

*Background*

William Sullivan ("Sullivan") was hired by Southwestern Bell Telephone Company

("SWBT") on March 14, 1966.  He worked for SWBT until December 31, 1983, when he

became an employee of AT&T Corp. ("AT&T").  Sullivan's years of service with SWBT were

automatically credited at AT&T.  When Sullivan retired on October 29, 1999, with more than

thirty years of service at SWBT and AT&T, he began receiving a monthly pension annuity of

$1,825.42.  That payment has continued without interruption to date.

Sullivan returned to work for SWBT on May 7, 2001.  Because Sullivan was already

receiving pension benefits for his previous employment, on August 6, 2002 SWBT gave him two

options:  (1) continue to receive his pension benefit, but set his Net Credited Service ("NCS")

date at May 7, 2001, for calculation of new benefits when he would retire for a second time; or

1

(2) cancel his pension benefit, and keep his original hire date of March 14, 1966 as his NCS date, so that all of his years of service would be aggregated for his future pension.  Sullivan signed a Waiver of Portability (the "Waiver") before a notary on August 16, 2002, choosing the first option of continuing to receive his pension benefit and waiving other pension benefits for his prior service.  On September 11, 2002, the SBC Pension Plan wrote Sullivan and informed him that his NCS date was May 7, 2001.

Beginning in about May 2006, Sullivan made contact with the Fidelity Service Center ("Fidelity"), which provided administrative services for pension claims.  On May 25, 2006, Fidelity erroneously told Sullivan that his NCS date was July 20, 1983.  On August 4, 2006, Fidelity sent Sullivan a benefit estimate, which inaccurately stated that Sullivan could receive a lump sum service pension benefit of $220,920.64, based on a July 20, 1983 NCS date.  The Court can find no support for that date, which was shortly before Sullivan first went to work for AT&T.

Sullivan accepted a voluntary severance on August 16, 2006.  On August 30, 2006, Fidelity sent a new estimate to Sullivan, stating that he was entitled to a lump sum service pension benefit of $222,243.31, again based on a July 20, 1983 NCS date, and a September 9, 2006 retirement date.  On September 15, 2006, Fidelity sent Sullivan another letter notifying him that his NCS date was in fact May 7, 2001, as a result of his signing the Waiver, and informing him that his service with SWBT and AT&T from 1966-1999 would not be recognized in his new pension benefit.  Sullivan was further advised that he was not eligible for a lump sum service pension benefit.

On or about December 22, 2006, Sullivan filed a claim with the AT&T Benefit Plan Committee, asserting his right to the lump sum benefit identified by Fidelity on August 30, 2006.

2

His claim and subsequent appeal were denied.  Sullivan was offered, but declined, the

opportunity to be re-employed in the same or a similar position to that he held before his August

2006 retirement.  On June 26, 2008, Sullivan brought suit under Section 502(a) of the Employee

Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*., alleging ERISA estoppel and breach

of fiduciary duty, and seeking to recover benefits from the AT&T Pension Benefit Plan –

Southwest Program (the "Plan").  Both AT&T and Sullivan seek summary judgment.

### AT&T's Motion for Summary Judgment

Because SWBT vested Fidelity with discretionary authority to determine eligibility for

benefits, the Court reviews the denial of benefits for abuse of discretion.[1]  Factual determinations

under an ERISA plan are also reviewed for abuse of discretion.[2]  In the Fifth Circuit, courts

generally apply a two-step analysis to determine whether the plan administrator abused its

discretion.[3]  The Court first determines whether the administrator's interpretation of the plan was

legally correct.[4]  Even if the Court finds that it was incorrect, the Court must determine if the

decision to deny benefits was supported by substantial evidence, and was not arbitrary and

capricious.[5]  Substantial evidence has been defined as "more than a scintilla, less than a

preponderance," and is comprised of "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."[6]  A decision is arbitrary and capricious if it was "made

---

[1] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629 (5th Cir. 2004).
[2] *See Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).
[3] *See Pylant v. Hartford Life & Accident Ins. Co.*, 497 F.3d 536, 540 (5th Cir. 2007).
[4] *Id.*
[5] *See Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004); *see also Sundown Ranch, Inc. v. John Alden Life Ins. Co*., No. 3:01-CV-1445, 2003 WL 21281642, at *3 (N.D. Tex. May 29, 2003).
[6] *Corry*, 499 F.3d at 398.

without a rational connection between the known facts and the decision or between the found facts and the evidence."[7]

### Breach of Fiduciary Duty

Sullivan alleges that AT&T owed him a fiduciary duty to convey complete and accurate information, which it breached when Fidelity provided erroneous benefits statements. This claim is not sustainable in light of the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), which held that "an ERISA plaintiff may bring a private action for breach of fiduciary duty only when no other remedy is available under 29 U.S.C. § 1132."[8]  Because Sullivan seeks to recover plan benefits under 29 U.S.C. § 1132(a)(1)(B), and additionally claims ERISA estoppel, these claims afford Sullivan an avenue for redress, precluding assertion of his claim for breach of fiduciary duty.[9]  The Court dismisses Sullivan's breach of fiduciary duty claim.

### Waiver and Release

A waiver is "a voluntary or intentional relinquishment of a known right."[10]  An ERISA claim may be waived by agreement, so long as the waiver is "explicit, voluntary and made in good faith."[11]  Federal common law governs the interpretation and validity of a waiver and the release of claims under ERISA.[12]  The Fifth Circuit employs a totality of the circumstances test to determine whether a waiver and release was valid.[13]  The employer bears the burden "to prove that the employee (1) signed the release that addresses the claims at issue, (2) received adequate

---

[7] *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828 (5th Cir. 1996).

[8] *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999).

[9] *See id.*; *see also Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998).

[10] *High v. E-Systems, Inc.*, 459 F.3d 573, 581 (5th Cir. 2006) (quoting  *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991)).

[11] *Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt., Inc.*, 491 F.3d 266, 273-74 (5th Cir. 2007) (quoting *Manning v. Hayes*, 212 F.3d 866, 871 (5th Cir. 2000)).

[12] *See Rosser v. Raytheon Excess Pension Plan*, No. 3:06-CV-1127-O, 2008 U.S. Dist. LEXIS 89595, at *25 (N.D. Tex. Nov. 4, 2008); *see also Guardian Life Ins. Co. of Am. v. Finch*, 395 F.3d 238, 240 (5th Cir. 2004).

[13] *See Rosser*, 2008 U.S. Dist. LEXIS 89595, at *25 (citing *O'Hare v. Global Natural Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990)).

consideration, and (3) breached the release."[14]  If these elements are met, the employee has the

burden to show that the waiver and release was invalid because of "fraud, duress, material

mistake, or some other defense."[15]  A court considers the following factors in determining if an

employee's waiver is valid:

1.  the plaintiff's education and business experience,

2.  the amount of time the plaintiff had possession of or access to the agreement
    before signing it,

3.  the role of the plaintiff in deciding the terms of the agreement,

4.  the clarity of the agreement,

5.  whether the plaintiff was represented by or consulted with an attorney, and

6.  whether the consideration given in exchange for the waiver exceeds employee
    benefits to which the employee was already entitled to by contract or law.[16]

All factors need not be present in order for a waiver to be valid.[17]

AT&T contends that Sullivan's claims are barred by the Waiver.  In consideration of the

continued payment of pension benefits by SWBT, although Sullivan had returned to work, the

Waiver required Sullivan to release claims against SWBT and AT&T.  On August 16, 2002,

Sullivan signed the Waiver.

Sullivan argues that the Waiver fails for lack of consideration.  SWBT had discretion to

determine how Sullivan's prior service would be measured,[18] and the Waiver required AT&T to

---

[14] *See id.*; *see also Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

[15] *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994).

[16] *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002) (quoting *O'Hare*, 898 F.2d at 1017).

[17] *See Kelley v. Lazo Techs., LTD*, No. 3:01-CV-2539-M, 2002 U.S. Dist. LEXIS 16089, at *10 (N.D. Tex. July 17, 2002).

[18] AT&T App. at 199 ("[T]he Plan Administrator shall have discretion to determine how the prior service shall be measured and recognized for purposes of this Plan.").

continue to provide Sullivan's $1825.42 monthly pension benefit, rather than transferring such obligation to SWBT.[19]  The Court finds that Sullivan received adequate consideration.

Sullivan notes that he did not have any claims against AT&T when he executed the Waiver, and contends that the Waiver could not release claims arising in the future.  The Waiver states:

> [I] irrevocably release and give up any and all claims and rights I may have against SBC . . . my former portability employer [AT&T] . . . including those claims of which I am not aware and those not mentioned in this Waiver and Release relating to the recognition of service with any portability employer by any other portability employer."[20]

The Waiver also specifically released any and all claims by Sullivan for benefits under ERISA.[21]  In *Chaplin*, the Fifth Circuit reviewed a similar waiver, and held that a general release of "any and all claims" extends to every conceivable cause of action, including ERISA claims.[22] The Waiver likewise released "any and all claims and rights," and specifically listed ERISA claims.  The Waiver thus covers Sullivan's claim to benefits under the Plan.

Sullivan contends that he did not knowingly or voluntarily execute the Waiver.  Sullivan, who attended two semesters of college, had possession of the two page Waiver for ten days before he executed it.  Sullivan did not participate in drafting the Waiver, but chose not to consult with an attorney, although the Waiver encouraged him to do so.[23]  The Court concludes from the record that there is no genuine issue of material fact that Sullivan knowingly and voluntarily executed the Waiver.

---

[19] AT&T App. at 224.
[20] *Id.*
[21] *Id.*
[22] 307 F.3d at 372-73.  *See also Rosser*, 2008 U.S. Dist. LEXIS 89595, at *26-29 (finding a release of "any claims of any nature whether now known or later becoming known from my employment or termination of employment" to cover an ERISA claim).
[23] *See, e.g.*, *Smith*, 298 F.3d at 444 n.4 (consulting with an attorney is not necessary for the Court to find that a waiver was knowing and voluntary).

Although Sullivan claims to have believed that after the Waiver, he would be treated as a new hire at SWBT, and then after five years, his prior service with AT&T would be recognized, this belief was unreasonable as a matter of law.[24]  The Special Notice Regarding Portability (the "Notice"), which accompanied the Waiver, advised Sullivan that if he waived portability, he would be considered a new hire without any prior service credit.[25]  A section of the Notice discusses recognizing prior service, but that section applies only to those who *did not* waive portability.[26]  The Waiver itself prevents recognition of prior service.[27]  Both the Waiver and the Notice included a toll-free number Sullivan could call if he had questions, but there is no evidence he did so.[28]

The Plan Documents Rule, on which Sullivan relies in contending that the Waiver is invalid, requires the plan administrator to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [Title I] and [Title IV] of [ERISA] . . . ."[29]  The rule enforces the statutory requirement that benefit plans be established and maintained pursuant to a written instrument.[30]  Because the Waiver was a signed written instrument relating to the Plan, and was consistent with the terms of the Plan, its signing did not violate the Plan Documents Rule.[31]

---

[24] Pl's Ex. A, ¶ 5.

[25] AT&T App. at 222-23.

[26] *Id*.

[27] AT&T App. at 224-25.

[28] AT&T App. at 222-25.

[29] *Kennedy v. Plan Adm'r for Dupont Sav. & Ins. Plan*, --- U.S. ---, 129 S.Ct. 865, 875 (2009) (quoting 29 U.S.C. § 1104(a)(1)(D)).

[30] *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 667 F. Supp. 2d 850, 894 (N.D. Ill. 2009) (citing 29 U.S.C. § 1102(a)(1)).

[31] *See, e.g.*, *Kennedy*, 129 S.Ct. at 878 (finding that the plan administrator properly distributed benefits in accordance with a beneficiary-designation form); *compare Burns v. Orthotek Inc. Employees Pension Plan and Trust*, No. 3:08-CV-190-PS, 2010 WL 558579, at *6 (N.D. Ind. Feb. 10, 2010) ("The statutory requirements and the 'plan documents rule' are intended to keep ERISA plan administrators from having to struggle with *home-made* attempts to waive benefits or change beneficiaries.") (emphasis added).

By executing the Waiver, Sullivan was to be considered a new SWBT employee, without any prior service credit, and all of his future SWBT benefits would be based on his SWBT service alone.[32]  Sullivan's service date was reset to May 7, 2001, the date SWBT rehired him.[33] This result was consistent with the Plan, which provided that nothing "shall be construed so as to create double-counting of service for any purpose."[34]  Because Sullivan waived his claim for portability of service, he has no claim to the lump sum service pension benefit under the Plan.[35] The Court grants AT&T summary judgment on Sullivan's action to recover benefits under the Plan.

*ERISA Estoppel*

Relying on *Rogers v. General Electric Co.*, 781 F.2d 452, 454 (5th Cir. 1986), Sullivan argues that the Waiver does not release his claim of ERISA estoppel, which arose when Fidelity misrepresented his benefits more than four years after he executed the Waiver.  *Rodgers* held that an otherwise valid release that waives prospective Title VII[36] rights is invalid, as contrary to public policy.[37]  In *Barron v. UNUM Life Insurance Co. of America*, the Fourth Circuit held that a waiver of all claims that the plaintiff had or may have against a plan administrator did not release the administrator from claims arising from events that had not occurred when the release was executed.[38]  Although a waiver may release known claims, it cannot release future, unknown

---

[32] AT&T App. at 223-25.
[33] AT&T App. at 227.
[34] AT&T App. at 199.
[35] The Plan provisions to which Sullivan cites govern the form of pension annuity, have no bearing on waiving portability, and do not invalidate the Waiver.  *See* AT&T App. at 44.
[36] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
[37] 781 F.2d at 454.  *See also Kelley*, 2002 U.S. Dist. LEXIS 16089, at *8 ("A party may validly waive claims that exist on the day he signs a release, although he may not waive future claims.").
[38] 260 F.3d 310, 317 (4th Cir. 2001).

claims.[39]  Sullivan's claim for ERISA estoppel, which was unknown on the date the Waiver was executed, was not waived.

To establish an ERISA estoppel claim, a plaintiff must prove:  "(1) a material misrepresentation, (2) reasonable and detrimental reliance upon that representation, and (3) extraordinary circumstances."[40]

It is undisputed that, in August 2006, Fidelity furnished Sullivan with inaccurate information about a lump sum service pension benefit of more than $220,000, based on a July 20, 1983 start date.[41]  Sullivan accepted a voluntary severance, and roughly four weeks later, Fidelity sent another statement informing Sullivan that he was entitled to more than $220,000, again based on a July 20, 1983 NCS date.[42]

Although Sullivan relied on these benefits statements, his reliance was unreasonable as a matter of law.[43]  Reasonable reliance cannot be based on informal estimates in the face of unambiguous plan terms.[44]  The information furnished by Fidelity contradicted the Plan, which stated that nothing "shall be construed so as to create double-counting of service for any purpose."[45]  A person of average intelligence and experience would understand that receiving a pension for prior service at SWBT and AT&T, in addition to a lump sum service pension benefit,

---

[39] *See Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1293 (10th Cir. 1991); *Reighart v. Limbach Co.*, 158 F. Supp. 2d 730, 732-33 (E.D. Va. 2001).

[40] *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 374 (5th Cir. 2008) (quoting *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444-45 (5th Cir. 2005)).

[41] AT&T App. at 228.

[42] AT&T App. at 237.

[43] *See E-Systems*, 459 F.3d at 580 (requiring that reliance also be reasonable).

[44] *See Nichols*, 532 F.3d at 375; *see also Mello*, 431 F.3d at 447.

[45] AT&T App. at 199.

based on the same period of employment, would constitute double-counting, prohibited by the Plan.[46]

Sullivan's reliance was also unreasonable in light of the prominent disclaimers in the estimates, which stated:  "The benefits presented are only an estimate of what you *could* receive. Your actual benefit will be determined at the time you elect to begin receiving benefits under the Program."[47]  Fidelity noted that future circumstances could impact the benefit that Sullivan received.[48]  Since Sullivan was not hired by SWBT or AT&T on July 20, 1983, estimates based on that date would be plainly inaccurate and unreliable.  Moreover, the Notice stated that Sullivan would be treated as a new SWBT employee without any prior service credit, which SWBT confirmed in a letter sent to Sullivan shortly after the execution of the Waiver.[49]  The Court further finds that no extraordinary circumstances existed.  There is no evidence of bad faith or fraud, nor attempts to actively conceal a significant change in the plan.[50]  SWBT's offer to reinstate Sullivan in the same or a similar position to that he held before his August 2006 retirement also negates a finding of extraordinary circumstances.  Accordingly, the Court need not consider whether the two Fidelity representations of benefits due to Sullivan were material or whether Sullivan detrimentally relied on them.

### Conclusion

For the reasons stated above, AT&T Inc.'s Motion for Summary Judgment is **GRANTED**, and Plaintiff William Sullivan's Motion for Partial Summary Judgment is

---

[46] *See Chacko v. Sabre, Inc.*, 473 F.3d 604, 612 (5th Cir. 2006) ("When interpreting plan provisions, we interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one.").

[47] AT&T App. at 228-30, 237-39 (emphasis in original); *see Mello*, 431 F.3d at 447 n.6 (noting that a plaintiff could not reasonably rely on benefit statements that contained prominent disclaimers).

[48] AT&T App. at 228-30, 237-39.

[49] *Id.* at 223, 227.

[50] *See Khan v. Am. Int'l Group, Inc.*, 654 F. Supp. 2d 617, 629 (S.D. Tex. 2009); *see also E-Systems*, 459 F.3d at 580 n.3; *see generally Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Foundation*, 334 F.3d 365, 383 (3d Cir. 2003).

**DENIED**.  AT&T Inc.'s Motion to Strike Plaintiff's Jury Demand [Docket Entry #23] is

**DENIED AS MOOT**.

       **SO ORDERED**.

     March 12, 2010.


                               **BARBARA M. G. LYNN**
                               **UNITED STATES DISTRICT JUDGE**
                               **NORTHERN DISTRICT OF TEXAS**